# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LLOYD BUTLER, | ) |
| Plaintiff, | ) |
| | ) Case No. 10 C 6098 |
| v. | ) |
| | ) Magistrate Judge |
| MICHAEL J. ASTRUE, | ) Martin Ashman |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lloyd Butler ("Plaintiff" or "Mr. Butler") seeks judicial review of a final decision of Defendant, Michael J. Astrue, the Commissioner of Social Security ("Commissioner"), denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI") under Title II of the Social Security Act. Before the Court is Plaintiff's motion for summary judgment. The parties have consented to have this Court conduct any and all proceedings in this case, including entry of final judgment. 28 U.S.C. § 636(e); N.D. Ill. R. 73.1(c). For the reasons stated below, Plaintiff's motion is denied in part.

### I. Legal Standard

In order to qualify for DIB, a claimant must demonstrate that he is disabled. An individual is considered to be disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. *Id.* Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A claim of disability is determined under a five-step analysis. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. First, the SSA considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(4)(I). Second, the SSA examines if the physical or mental impairment is severe, medically determinable, and meets the durational requirement. 20 C.F.R. § 404.1520(4)(ii). Third, the SSA compares the impairment to a list of impairments that are considered conclusively disabling. 20 C.F.R. § 404.1520(4)(iii). If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation proceeds to step four. *Id.* Fourth, the SSA assesses the applicant's RFC and ability to engage in past relevant work. 20 C.F.R. § 404.1520(4)(iv). In the final step, the SSA assesses whether the claimant can engage in other work in light of his RFC, age, education and work experience. 20 C.F.R. § 404.1520(4)(v).

Judicial review of the ALJ's decision is governed by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971). The court reviews the entire record, but does not displace the ALJ's judgment by reweighing the facts or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Thus, even if reasonable minds could differ whether the Plaintiff is disabled, courts will affirm a decision if the ALJ's decision has adequate support. *Elder*, 529 F.3d at 413 (citing *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

## II. **Background Facts**

Plaintiff filed for DBI and SSI on October 20, 2008, claiming that he had become disabled as of June 15, 2007. His claims were denied initially and again upon reconsideration, after which a hearing was held on October 8, 2009 before administrative law judge ("ALJ") John Mondi. The ALJ issued a decision on November 16, 2009, finding that Plaintiff was not disabled. The Appeals Council denied review, and the ALJ's ruling became the Commissioner's final decision. Plaintiff then filed the instant action on September 23, 2010.

### A. **Medical History**

At the time of the hearing, Mr. Butler was a fifty-nine year old widower with three adult children. He has a tenth-grade education, and he served in the Army for two years from 1970 to 1972. During the past fifteen years, Mr. Butler worked in construction from 1974 through 2001, and as a part-time maintenance employee for a fast-food restaurant from June 2002 through June 2007. Plaintiff stated that he was forced to resign from his position because of pain he began to

- 3 -

experience in his right shoulder, neck, and lower back. (R. 34). Plaintiff also testified that he suffered a stroke at the age of thirty-three. (R. 39).

As Mr. Butler stated, however, he never saw a physician for his alleged physical problems. (R. 150). Instead, the first medical record in evidence is the report of Dr. Therese Lucietto-Sieradzki, to whom Mr. Butler was referred by the SSA for a consultative exam on November 19, 2008. Dr. Lucietto-Sieradzki noted that Plaintiff had a number of limitations in moving his upper body, including reduced cervical extension and bending. (R. 224). She also found that his ability to flex his right shoulder was one-third of a normal range, though his left shoulder was within the average category. Mr. Butler's abduction range for both shoulders was only forty out of 150. (R. 224-25). His blood pressure was measured at 178/101, though Mr. Butler stated that he could no longer afford medication to treat his condition. (R. 227). Dr. Lucietto-Sieradzki noted that Plaintiff stated he smoked one pack of cigarettes each day and drank up to one case of beer each week, a statement she believed was confirmed by Mr. Butler's "general body odor." (R. 228). Based on her examination, Dr. Lucietto-Sieradzki concluded that Plaintiff suffered from high blood pressure, osteoarthritis, lumbago, alcoholism, and a right oculomotor nerve injury that made the right eye nonresponsive to light. (R. 227-28).

As a veteran, Mr. Butler presented one month later at the Veterans Affairs Medical Center ("VAMC") in Hines, Illinois, where he was seen by a nurse practitioner. Mr. Butler was initially diagnosed with back and neck pain. An x-ray of the cervical spine showed mild to moderate disc narrowing at C4 through C7, mild spondylosis, and narrowing of the neural foramina at C5 to C7 bilaterally. (R. 243). A lumbar spine x-ray indicated mild spondylosis at all levels. (R. 243). Mr. Butler also underwent an MRI of the right shoulder on January 12,

2009, which showed a minimal to mild amount of fluid in the acromial and sub-deltoid bursae, a cyst, and a partial tear of the supraspinatus ligament. (R. 248).

At a follow-up appointment on February 23, 2009, Mr. Butler received a steroid injection in the right shoulder given by Dr. Alberto Morejon. (R. 310-11). Dr. Morejon noted that Plaintiff showed significant weight loss, although his specific weight is not indicated on the treatment note. Plaintiff was given a set of exercises to perform at home and instructed to avoid reaching overhead. (R. 311). Dr. Morejon prescribed Tylenol for pain, lisinopril for blood pressure, and recommended that Mr. Butler return for another appointment four to six weeks later. He did so on March 16, when he complained that his neck pain was a four out of ten, with back pain at six out of ten. (R. 384). Mr. Butler complained that sitting, standing, and walking aggravated the pain, but that no activity relieved it.

### B. The State Agency Report

On February 18, 2009, Dr. Charles Kenney issued a RFC assessment for the SSA based on a review of the records available at that time. Dr. Kenney believed that Mr. Butler could lift twenty-five pounds frequently, and fifty pounds occasionally; could sit, stand, and walk up to six hours a day; and had an unlimited capacity to push and pull. (R. 278). Occasional limitations were noted in Mr. Butler's ability to climb stairs, with a limited capacity to reach in all directions, including overhead. (R. 278-80). Dr. Kenney's review of the evidence led him to conclude that Mr. Butler's allegations were only partially credible and that his activities of daily living had not been significantly limited. (R. 284).

## C. Hearing Testimony

Mr. Butler testified that he was forced to resign his job as a maintenance worker in June 2007 because his duties required a variety of physical activities, including washing windows, unloading trucks, and performing carpentry work. (R. 33). His earlier work as a construction worker had also required heaving lifting. (R. 34). Mr. Butler did not state when his shoulder, cervical, and lumbar spine pain began, but he claimed that it prevents him from lifting more than ten to twenty pounds with his left hand, and less with his right. (R. 34-35). However, he is unable to lift his arm at all on some occasions. (R. 40). Mr. Butler stated that he can walk only a few blocks before back pain requires him stop and rest. Sitting is limited to one-half to one hour, and standing must be confined to fifteen minutes before he feels the need to change positions. (R. 35).

Despite these self-described limitations, Mr. Butler stated that he tries to help out around the house he shares with a friend. He helps the children living in the house to get to school and performs small daily chores such as doing the dishes. (R. 36-37). He also tries to cut the grass, but it takes a long time for him to do so because he must stop to rest. (R. 37). He does not drive, but he goes to a grocery store near his home to buy food in the small quantities he is able to carry back to the house. He is no longer able to shovel snow. (R. 39). Mr. Butler admitted that he drinks "a little bit," which he defined as three to four six-packs of beer each week. He also lost his driver's license a number of years ago due to driving while intoxicated. (R. 35, 37).
Mr. Butler stated that his weight had decreased from 120 pounds to 106 pounds, a problem he attributed to bad teeth that prevented him from eating more. (R. 36).

Also present at the hearing was vocation expert ("VE") William Schweih. Mr. Schweih testified that no earnings supported Mr. Butler's claim that he worked in construction until 2001. The VE described this work as skilled, and explained it as involving a heavy exertional level as described by Mr. Butler. (R. 42). His work at the fast food restaurant involved semi-skilled work at the medium level of physical exertion. Neither the construction work nor the maintenance work constituted substantial gainful activity, according to the VE. (R. 42-43).

The ALJ then posed several hypothetical questions to the VE. He first asked the VE to assume a claimant who could perform medium work, with the ability to climb stairs and reach overhead only occasionally, and with no ability to climb ladders. The VE stated that such a person would not be able to perform Mr. Butler's past relevant work. (R. 43). However, if his ability to reach with his arm only limited his ability to reach overhead, he could undertake his past work as a maintenance employee. (R. 44).

The ALJ then included different criteria in his hypothetical question. If the past work as a maintenance employee were eliminated, the VE testified that Mr. Butler's job skills would transfer to a sales attendant in a hardware store. The VE described such work as semi-skilled work that included 2,000 to 3,000 jobs in the Chicago area. (R. 44). If Mr. Butler were limited to light work instead of medium work, his job skills would also transfer to the same number of positions as a store attendant. Finally, the ALJ asked the VE to assume a claimant with all the limitations testified to by Mr. Butler at the hearing. The VE stated that his job skills would not transfer to any other position under those conditions and that, in light of his age, all work would be precluded for him. (R. 45).

### D. The ALJ's Decision

The ALJ issued a decision on November 16, 2009 finding that Mr. Butler was not disabled. At Step 1, Mr. Butler was found not to have engaged in substantial gainful activity since his alleged onset date of June 15, 2007. The ALJ determined at Step 2 that he had the severe impairments of degenerative disc disease, hypertension, and problems related to his right shoulder, but none of these impairments were found at Step 3 to meet or medically equal one of the Listings.[1] Before proceeding to Step 4 and Step 5, the ALJ concluded that Mr. Butler's testimony was only partially credible. The ALJ also found that Mr. Butler has the RFC to perform light work with various limitations. Based on this RFC, the ALJ determined at Step 4 that Mr. Butler could not perform any of his past relevant work. At Step 5, the ALJ relied on the VE's testimony to find that Mr. Butler could perform work as a clerk in a hardware store. As the VE determined that 2,000 to 3,000 such jobs existed in the Chicago region, the ALJ determined that Mr. Butler was not disabled.

### III. Discussion

Mr. Butler challenges the ALJ's decision on three grounds. According to Mr. Butler, the ALJ erred: (1) by finding that his testimony was only partially credible; (2) in his RFC assessment; and, (3) by not carrying his burden of proof at Step 5.

---

[1] Mr. Butler alleged on his SSA claim form that he also suffered from a vision problem. (R. 148). The ALJ did not discuss the vision issue in his decision, but Mr. Butler does not object to the ALJ's Step 2 findings.

A.  **The Credibility Issue**

Mr. Butler first claims that the ALJ erred by finding that his testimony was only partially credible. A court reviews an ALJ's credibility decision with deference because "the ALJ is in the best position to determine the credibility of witnesses." *Craft*, 539 F.3d at 678. An ALJ should consider the entire case record and give specific reasons for the weight given to an individual's statements. SSR 96-7p; *see also Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (stating that an ALJ "must articulate specific reasons for discounting a claimant's testimony as being less than credible."). Factors that should be considered include the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, the types of treatment received, any medications taken, and functional limitations. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p. A reviewing court must be mindful that reversal on this ground is appropriate only if the credibility determination is so lacking in explanation or support that it is "patently wrong." *Elder*, 529 F.3d at 413-14.

In reaching his decision, the ALJ noted that Mr. Butler had only received conservative treatment for his impairments. Mr. Butler does not dispute that his treatment was anything other than conservative, or that the ALJ was not permitted to consider that fact as part of the credibility assessment. Social Security Ruling 96-7p directs ALJs to consider non-medication treatments a claimant has received to alleviate pain, and states that a claimant's testimony may be less credible "if the level or frequency of treatment is inconsistent with the level of complaints . . . ." SSR 96-7p. The fact that a claimant has received only conservative treatment is a ground for finding that his allegations concerning pain and other limiting factors are not entirely credible. *See*

*Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (finding that a claimant's testimony was not fully credible when treatment was "routine and conservative"); *see also Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009).

Mr. Butler claims that this was the only factor the ALJ considered in reaching his credibility assessment and that, without more, the ALJ failed to provide sufficient reasons to explain his decision. The Court agrees that the ALJ's discussion of his reasoning was not exhaustive, but he did not only rely on the conservative nature of Mr. Butler's treatment to reach his decision. The ALJ also considered Mr. Butler's medication history. Social Security Ruling 96-7p requires an ALJ to consider "the type, dosage, effectiveness, and side effects of any medication the individual has taken" to relieve his symptoms. SSR 96-7p. An ALJ is entitled to consider the fact that a claimant only takes over-the-counter medication as a factor in assessing allegations involving pain. *See Trevino v. Astrue*, No. 1:08-cv-820, 2009 WL 405862, at *8 (S.D. Ind. Feb. 18, 2009) (upholding an ALJ's credibility finding based, in part, on the absence of prescription pain medication); *Peterson v. Astrue*, No. 07-C-227, 2007 WL 5511186, at *5 (W.D. Wis. Oct. 31, 2007) (finding that a conservative medication regime supports an ALJ's credibility determination). The ALJ here pointed out that, despite Mr. Butler's claims of disabling pain, he was only taking over-the-counter Tylenol to alleviate his discomfort. (R. 20). Mr. Butler does not argue that any physician prescribed a stronger pain medication. He also fails to present any reason, such as financial or medical limitations, that would limit him to taking only over-the-counter medications.

The ALJ also considered the "diagnosis, prognosis, and other medical opinions provided by treating or examining physicians," as required by SSR 96-7p. As the ALJ noted, the x-ray

notes concerning his lower back and cervical spine state that no attention was needed for the impairments that were shown by the radiology study. (R. 20, citing R. 248-49). The shoulder impairment was evaluated as a "major impairment, attn. needed," but the ALJ properly noted that Mr. Butler's physician did not recommend surgery for any of his physical problems. (R. 21). Instead, the doctor advised him to undergo physical therapy. (R. 19). The ALJ also pointed out that despite Mr. Butler's claim that he had to leave his job as a maintenance worker because of pain, no physician had ever suggested that he could not have continued to work at a less demanding level of physical activity. (R. 21).

Social Security Ruling 96-7p states that a claimant's allegations concerning pain cannot be disregarded solely because they are not substantiated by the objective medical record. SSR 96-7p. In this case, however, the ALJ did not do so. He acknowledged that Mr. Butler experienced pain, but noted that the medical evidence did not support a finding that it was so severe that Mr. Butler was unable to work altogether, as he claimed. (R. 20). The ALJ's credibility discussion is far from detailed or exhaustive. However, "SSR 96-7p . . . does not require an ALJ to analyze and elaborate on each of the seven factors set forth when making a credibility determination." *Clay v. Apfel*, 64 F. Supp.2d 774, 781 (N.D. Ill. 1999). In the absence of any argument by Mr. Butler on what evidence the ALJ should have considered that would support his credibility, the Court cannot conclude that the ALJ's credibility assessment is patently incorrect. Accordingly, Plaintiff's motion is denied on this issue.

## B. The RFC Issue

Before proceeding to Steps 4 and 5, an ALJ determines a claimant's ability to perform work-related duties. He does so by first assessing a claimant's RFC based on all relevant evidence in the record. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ in this case found that Mr. Butler had the RFC to perform work at the light exertional level, with several exertional and non-exertional limitations. The ALJ determined that Mr. Butler can lift ten pounds frequently and twenty pounds on occasion. He can sit, stand, and walk for six hours out of an eight-hour work day, climb stairs and reach overhead occasionally, and push or pull with the same restrictions as those placed on lifting. (R. 20).

The ALJ reached this conclusion, in part, by referring to the RFC assessment provided by the non-examining state medical consult, Dr. Kenney. Dr. Kenney stated that Mr. Butler could lift twenty-five pounds frequently, and fifty pounds occasionally; could sit, stand, and walk up to six hours a day; and had an unlimited capacity to push and pull. (R. 278). Occasional limitations were noted in Mr. Butler's ability to climb stairs, with a limited capacity to reach in all directions, including overhead. (R. 278-80). The ALJ interpreted Dr. Kenney's finding as an RFC of medium work, which the regulations define as involving lifting occasional lifting of fifty pounds and frequent carrying and lifting of twenty-five pounds. 20 C.F.R. § 404.1567(c). The ALJ then determined that Dr. Kenney's opinion was entitled to "reduced weight" instead of controlling weight to reach the RFC of light work.[2] (R. 21). The ALJ based this finding on his belief that

---

[2] An individual who can work at the medium exertional level is also deemed to be able to work at the light level. 20 C.F.R. § 404.1567(c) ("If someone can do medium work, we

(continued...)

"the recent treatment records and the testimony, to the extent it is being credited, indicate" a light exertional level. (R. 21).

Mr. Butler does not contest any specific limitation in the ALJ's RFC assessment; rather, he argues that having found that Dr. Kenney's opinion was "unreliable," the ALJ was required to update the medical record by recontacting one of Mr. Butler's treating physicians. Without doing so, the ALJ allegedly "played doctor" by reaching a RFC without proper medical support for the RFC finding.

The Court disagrees with this reasoning. It is true that when an ALJ sets aside all medical evidence concerning RFC, he impermissibly plays doctor by reaching a conclusion based on his own opinion. *See Bailey v. Barnhart*, 473 F. Supp.2d 822, 838-39 (N.D. Ill. 2006) (stating that "[t]he ALJ simply cannot do this"); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). But the ALJ in this case did not do what Mr. Butler charges him with. He found that Dr. Kenney's report was entitled to "reduced weight," not that it was "unreliable." (R. 21). Mr. Butler's allegation suggests that the ALJ gave Dr. Kenney's report no weight at all and that he set aside the state agency doctor's opinion altogether. However, the ALJ stated that he credited the report to the extent that it supported a light RFC and gave reasons for the weight assigned to Dr. Kenney's opinion. Thus, it is not the

---

[2](...continued)
determine that he or she can also do sedentary and light work").

case that the ALJ relied on unspecified record evidence to find that Plaintiff could perform light work, as Mr. Butler claims.[3]

Mr. Butler does not challenge the ALJ's reasons for giving a reduced weight to Dr. Kenney's report, or argue that it should have been given a different weight. Instead, he claims that Seventh Circuit law prevents an ALJ from using a non-examining state agency physician's report as substantial evidence for determining RFC. In support, Mr. Butler cites *Gudgel v. Barnhart*, 345 F.3d 467 (7th Cir. 2003) for the proposition that "a non-examining physician [opinion] does not, by itself, suffice [as substantial evidence]" for an RFC finding. *Gudgel*, 345 F.3d at 470. Mr. Butler's reliance on *Gudgel*, however, is misplaced. It is well established in this Circuit that an ALJ is entitled to rely on the opinion of a state agency physician. *See Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004); *Lewis v. Astrue*, 518 F. Supp.2d 1031, 1043-44 (N.D. Ill. 2007); *Cave v. Astrue*, No. 10 C 5605, 2011 WL 3511046, at *5 (N.D. Ill. Aug. 10, 2011) ("An ALJ is entitled to rely on the reports of state agency physicians who are skilled in social security disability evaluations") (citation omitted). The language from *Gudgel* cited by Mr. Butler states that an ALJ cannot rely on the opinion of a non-examining medical expert to reject a treating physician's opinion without explaining how the record evidence, including the medical expert's testimony, actually contradicts the treating physician's opinion. *Id.* In this case, no treating physician gave an opinion on Mr. Butler's RFC,

---

[3] The ALJ stated that one factor in giving less weight to Dr. Kenney's finding of a RFC of medium work was Mr. Butler's testimony. Mr. Butler states in passing that the ALJ could not rely on his own testimony when the ALJ himself found it not to be credible. But the ALJ found Plaintiff to be partially credible, not entirely non-credible. The ALJ plainly gave some credence to Mr. Butler's allegations concerning pain. (R. 20). He then explained that Dr. Kenney's report was given reduced weight based on the medical evidence "and the testimony, to the extent that it is being credited[.]" (R. 21).

and no medical expert appeared at the hearing. Thus, the ALJ did not use Dr. Kenney's report to reject or second-guess any other physician's opinion.

For this reason, the ALJ was not required to recontact Plaintiff's treating physicians, as Mr. Butler argues. An ALJ must do so when the evidence received from the treating physician "or other medical source is inadequate for us to determine whether you are disabled[.]" 20 C.F.R. § 404.1512(e)(1). Like treating sources, state agency physicians "are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i). As Mr. Butler argues only that the ALJ was prohibited as a matter of law from relying on Dr. Kenney's report, and not that the ALJ's evaluation of the report was incorrect, he fails to show that the ALJ was not entitled to base his RFC assessment on the state agency physician's opinion. Plaintiff's motion is denied on this issue.

### C. The Step 5 Issue

Finally, Mr. Butler argues that the ALJ erred by failing to ask the VE if his testimony concerning the work that Mr. Butler could perform was consistent with the Dictionary of Occupational Titles ("DOT"). Social Security Ruling 00-4p places an affirmative duty on the ALJ to ask "if the evidence he or she has provided conflicts with information provided in the DOT. SSR 00-4p. *See also Prochaska*, 454 F.3d at 735 (stating than an ALJ "*has an affirmative responsibility* to ask about any possible conflict between that VE or VS evidence and information provided in the DOT"). This duty arises when a conflict between the DOT and the VE's testimony is apparent. *Overman v. Astrue*, 546 F.3d 456, 463-64 (7th Cir. 2008). The ALJ can

do so either before or after the VE gives her testimony. *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011).

In this case, the ALJ plainly failed to make any inquiry as to whether the VE's testimony was consistent with the DOT. Mr. Butler argues that this oversight requires remand because the VE's statements that he could perform the job of a clerk in a hardware supply store is inconsistent with the relevant DOT job descriptions. The VE's testimony presumed that Mr. Butler could work at the light exertional level and that he would do so at a specific vocational preparation level ("SVP") of four. (R. 46). As SSR 00-4p states, a SVP of four corresponds to a semi-skilled work level. SSR 00-4p. However, the VE did not identify the DOT number of the position he had in mind. Mr. Butler points to two sales jobs whose requirements conflict with the VE's testimony. The first, a retail sales attendant (DOT # 299.677-010) is an unskilled position. As Mr. Butler notes, an individual cannot transfer work skills to a job that is unskilled. *See* SSR 82-41. The second, a building materials sales clerk (DOT # 290.677-014) requires the ability to work at a heavy exertional level.

The Commissioner counters that any error the ALJ committed by failing to inquire about inconsistencies with the DOT is harmless. In support, the Commissioner argues that the ALJ's reference to a hardware sales attendant should be understood to have referred to DOT #279.357-050, which describes the duties for a sales person in a hardware store. As the Commissioner correctly points out, this position requires a SVP of four and the ability to work at a light level, as the VE testified.

The Court agrees that if this case were to be remanded, the 2,000 to 3,000 jobs identified by the VE as existing would be available to Mr. Butler under DOT #279.357-050, and the ALJ would reach the same decision he did here. The VE clearly specified that Mr. Butler could work as a sales person in a hardware store. DOT #279.357-050 refers to "general hardware" and describes the job duties as "[s]ells hardware, such as nails, bolts, screws, hand-and-power tools, electrical equipment, plumbing supplies, garden tools, and paint[.]" By contrast, Mr. Butler identifies jobs as an attendant in a self-service store (DOT #299.677-010) and a sales attendant in a building materials store, which involves cutting lumber, using power saws, and loading purchases into vehicles (DOT #290.677-014). The VE made no reference to any of the job functions Mr. Butler references, but he did identify the hardware store position cited by the Commissioner, together with the exertional and skill level identified for that position by DOT #279.357-050.

The harmless error applies when an ALJ fails to follow SSR 00-4p, but where other positions remain available for a claimant. *See Williams-Overstreet v. Astrue*, 364 Fed.Appx. 271, 275 (7th Cir. 2010); *Zblewski v. Astrue*, 302 Fed.Appx. 488, 494-95 (7th Cir. 2008); *Keiber v. Astrue*, No. 08 CV 2616, 2009 WL 3188065, at *13 (N.D. Ill. Sept. 30, 2009) ("If we remanded for the ALJ to determine whether a conflict exists between the VE's testimony and the DOT, we are certain that the result would be the same"). Accordingly, the Court finds that any error the ALJ may have committed by failing to follow SSR 00-4p was harmless under these facts. Plaintiff's motion is denied on this issue.

### V. Conclusion

For the aforementioned reasons, the Court affirms the Commissioner's final decision and denies Plaintiff's Motion for Summary Judgment.

**ENTER ORDER:**

_____
MARTIN C. ASHMAN
United States Magistrate Judge

**Dated:** December 13, 2011.